UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Estate of Christian Maire,
Michal Figura, and Craig Evans,

     Plaintiffs,                    Civil No. 20-13271

v.                              Honorable Judith E. Levy
                                Mag. Judge R. Steven Whalen

United State of America,

     Defendant.

## **DEFENDANT'S MOTION TO DISMISS**

Defendant United States of America, by and through its attorneys, Saima S. Mohsin, Acting United States Attorney for the Eastern District of Michigan, and Jennifer L. Newby, Assistant United States Attorney, move this Court for dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Pursuant to E.D. Mich. LR 7.1(a), counsel for Defendant sought concurrence from Plaintiffs' counsel on April 7, 2021, and concurrence was denied.

In support of its motion, Defendant relies on the accompanying brief, exhibit, and documents on file with this Court.

                           Respectfully submitted,

                           SAIMA S. MOHSIN
                           Acting United States Attorney

                           By:  /s/ Jennifer L. Newby

1

Jennifer L. Newby (P68891)
Assistant United States Attorney
Attorneys for Defendant
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0295
Jennifer.Newby@usdoj.gov

Dated:  April 9, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Estate of Christian Maire,
Michal Figura, and Craig Evans,

      Plaintiffs,                    Civil No. 20-13271

v.                                  Honorable Judith E. Levy
                                  Mag. Judge R. Steven Whalen

United State of America,

      Defendant.

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

## STATEMENT OF THE ISSUE PRESENTED

Did the manner in which the staff at the Federal Detention Center at Milan provided for Plaintiffs' and the decedent's safety during their detention fall within the discretionary function exception to the Federal Tort Claims Act?

## MOST CONTROLLING AUTHORITY

*United States v. Gaubert*, 499 U.S. 315 (1991)

*United States v. S.A. Empressa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797 (1984)

*Montez v. United States*, 359 F.3d 392 (6th Cir. 2004)

## I.    INTRODUCTION

Plaintiffs claim that the Bureau of Prisons (BOP) was negligent in providing for the safety of Plaintiffs Michael Figura and Craig Evans, and the decedent Christian Maire during their detention at the Federal Detention Center at Milan (FDC Milan). All three are sex offenders who were assaulted while detained at FDC Milan. Maire died of his injuries.

While the government has waived sovereign immunity for certain tort actions, it retains sovereign immunity for discretionary functions. Were it otherwise, the Court could be asked to second-guess everything from agency policy decisions to daily operations. While BOP has a general non-discretionary obligation to provide for the safety of those in its care, how BOP provides for inmates' safety is left to the discretion of the agency. Plaintiffs claim that the manner in which they were detained at FDC Milan was negligent because BOP staff allegedly made little or no effort to protect them from the general population, who Plaintiffs claim had a known hostility towards sex offenders. Plaintiffs do not identify any statutes, regulations, or agency policies that were not followed. Because Plaintiffs' claim is based on the discretionary manner in which BOP provided for their safety, this Court lacks subject matter jurisdiction and the action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## II.    BACKGROUND

### A.    The Plaintiffs and the decedent were sex offenders.

#### 1.    Christian Maire

Maire was sentenced to 480 months of federal detention following a guilty plea to violation of 18 U.S.C. § 2252A(g)(1)/Child Exploitation Enterprise. *See United States v. Maire, et al*., Case No. 18-20128, ECF No. 152. Maire was the architect of a long-running and sophisticated child exploitation ring. *Id*. at ECF Nos. 64, 126. The Court recommended to the BOP, but did not order, that Maire be placed "at a facility with other sex offenders/defendants convicted of sex offenses." *Id*. at ECF No. 152. From December 7, 2018, until January 2, 2019, Maire was housed in the East Unit at FDC Milan. (Clore, Ex. 1, ¶ 14). At FDC Milan, Maire was housed in a cell with another sex offender, Michael Figura. *Id*.

#### 2.    Michael Figura

Figura was sentenced to 375 months of federal detention following a guilty plea to violation of 18 U.S.C. § 2252A(g)/Child Exploitation Enterprise. *See United States v. Maire, et al*., Case No. 18-20128, ECF No. 156. Figura was part of the child exploitation ring maintained by Maire. *Id*. at ECF Nos. 74, 119. The Court did not make any recommendation regarding Figura's placement with other sex offenders. *Id*. at ECF No. 156. From December 7, 2018, until January 2, 2019, Figura was housed in the East Unit at FDC Milan. (Clore, Ex. 1, ¶ 14).

2

### 3. Craig Evans

Evans was charged with receipt and possession of child pornography. *See United States v. Evans*, Case No. 18-20421, ECF No. 9. From November 28, 2018, to January 2, 2019, Evans was housed in the East Unit at FDC Milan. (Clore, Ex. 1, ¶ 15). He is currently awaiting sentencing after pleading guilty. *See United States v. Evans*, Case No. 18-20421, ECF No. 58.

### B. FDC Milan does not have a separate sex offender cadre.

The BOP facility in Milan, Michigan consists of a Federal Correctional Institution (FCI Milan) and a separate detention center (FDC Milan). (Clore, Ex. 1, ¶ 4). As a federal detention center, FDC Milan primarily houses pretrial detainees, those awaiting sentencing, and those who have been sentenced and are awaiting designation to an FCI or United States Penitentiary. *Id*. at ¶ 5. FDC Milan has two housing units of equal capacity, the East Unit and the West Unit. *Id*. at ¶ 6. Both units are considered general population and hold similar inmates. *Id*. FDC Milan does not have a separate administrative segregation unit or a separate sex offender cadre. *Id*. at ¶ 7. However, where segregation is required for safety, disciplinary, or other reasons, FDC Milan can house its inmates in the Special Housing Unit at FCI Milan. *Id*. at ¶ 8. As circumstances permit, FDC Milan attempts to house sex offenders either in a cell alone, or with another sex offender. *Id*. at ¶ 9.

3

**C.     Plaintiffs and their decedent were assaulted at FDC Milan.**

On January 2, 2019, Plaintiffs Figura and Evans, and the decedent Maire, were assaulted at FDC Milan by three inmates. (Compl., ECF No. 1, ¶ 17). During the attack, Figura and Maire were beaten and stabbed. (Clore, Ex. 1, ¶ 16). Maire died of his injuries. *Id*. Evans was also beaten. *Id*. The inmates who allegedly committed the assault are being criminally prosecuted. *See United States v. Castro, et al*., Case No. 19-20498. There were no incidents involving Plaintiffs and the decedent leading up to the attack. (Clore, Ex. 1, ¶¶ 13, 17).

### III.   STANDARD OF REVIEW

When a Rule 12(b)(1) motion is made, the plaintiff has the burden of proving jurisdiction in order to survive the motion.  *Moir v. Greater Cleveland Regional Transit Auth., 895* F.2d 266, 269 (6th Cir. 1990).  "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007). Where the matter involves exceptions to jurisdiction under the Federal Tort Claims Act, "[o]nly after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by [28 U.S.C.] § 2680 does the burden fall on the government to prove the applicability of a specific

provision of § 2680." *Sharp ex rel. Est. of Sharp v. United States*, 401 F.3d 440, 443, n.1 (6th Cir. 2005). "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction…the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015).

In this case, Plaintiffs' Complaint fails to establish jurisdiction under a facial attack because Plaintiffs fail to plead a claim that is not excepted by 28 U.S.C. § 2680. *Sharp*, 401 F.3d at 443, n.1. Further, under a factual attack, Defendants establish that the discretionary function exception applies in this case. *Id*.

## IV.   LAW AND ANALYSIS

### Plaintiffs' claims are barred by the discretionary function exception of the Federal Tort Claims Act

It is a fundamental principle that "the United States government may not be sued without its consent." *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004). Under the Federal Tort Claims Act (FTCA), "the United States has consented, subject to certain exceptions, to suit for damages for personal injuries caused by the negligence of government employees acting within the course and scope of their employment." *Id*. However, a limitation on the FTCA's waiver of sovereign immunity is the discretionary function exception. *Id*. Under the discretionary function exception, the United States has not waived sovereign immunity for "[a]ny claim based upon an act or omission of an employee of the Government, exercising

due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "Because the United States has not waived its sovereign immunity with respect to discretionary functions, courts lack subject matter jurisdiction over acts falling within the discretionary function exception." *Montez*, 359 F.3d at 395.

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empressa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). The discretionary function exception is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (citing *Varig Airlines*, 467 U.S. at 814).

There is a two-part test to determine whether a governmental act falls within the exception. *Montez*, 359 F.3d at 395 (citing *Gaubert*, 499 U.S. at 322). The court must first ask "whether the act involves 'an element of judgment or choice.'" *Id.* It

is well-settled that "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id. See also Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997) ("The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.'"). If the judgment or choice is discretionary, "then the court must ask 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Montez*, 359 F.3d at 395 (citing *Gaubert*, 499 U.S. at 322-23).

### A.    The conduct at issue in this case is discretionary.

"In deciding whether the complained of conduct was grounded in judgment or choice, the crucial first step is to determine exactly what conduct is at issue." *Rosebush*, 119 F.3d at 441. Plaintiffs focus mainly on the decision to place them and the decedent, all sex offenders, in the general population. (Compl., ECF No. 1, ¶¶ 11-13). However, Plaintiffs do not allege facts to demonstrate that BOP failed to follow any statute, regulation, or agency policy in providing for the care and safety of Plaintiffs and the decedent.

### 1.    BOP has discretion in how to protect sex offenders.

Plaintiffs seem to suggest there was a general duty to take some unspecified action to protect them because they were sex offenders and FDC Milan was allegedly

"a dangerous place for sex offenders." *Id*. at ¶ 12. There is no statute, regulation, or policy, specific to sex offenders which prescribes actions to be taken at FDC Milan for their protection. (Clore, Ex. 1, ¶ 9). Plaintiffs incorrectly claim the sentencing Court ordered Maire and Figura not to be placed in general population. (Compl., ECF No. 1, ¶ 9). This is untrue. The sentencing Court *recommended* that Maire be placed with other sex offenders. *See United States v. Maire, et al*., Case No. 18-20128, ECF No. 152. The recommendation is consistent with the long recognized principle that, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). The recommendation was just that, a recommendation, and did not eliminate BOP's discretion in determining the manner in which Maire was housed. There was no similar recommendation for Figura or Evans.

There is a federal statute regarding the general duty to provide for the safekeeping and protection of all persons charged or convicted of a federal crime. *See* 18 U.S.C. § 4042(a). However, the Sixth Circuit has held that the statute is "of a general nature" and gives "no guidance" on "how to accomplish these objectives." *Montez*, 359 F.3d at 396. *See also Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that [18 U.S.C. § 4042] sets forth a mandatory duty of

care, it does not, however, direct the manner by which the BOP must fulfill this duty…[t]he statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates."). Plaintiffs cannot rely on § 4042 to defeat the discretionary function exception because it does not prescribe any conduct.

Plaintiffs also suggest that there was an obligation to house them elsewhere because they are sex offenders and they claim there have been prior attacks on sex offenders in the East Unit where they were housed. (Compl., ECF No. 1, ¶ 13). However, Plaintiffs merely assert that it was negligent not to take additional precautions, but do not "address the prerequisite jurisdictional issues of the discretionary function exception" by identifying any mandate that required additional precautions. *Calderon*, 123 F.3d at 950.

Whether BOP was negligent in how it protected Plaintiffs and the decedent is irrelevant to whether the discretionary function exception applies. *See Rosebush*, 119 F.3d at 442 (holding that it is inappropriate to collapse the discretionary function inquiry into a question of whether the defendant was negligent, because negligence "is irrelevant to our inquiry at this point."). Absent any specific conduct that was required, Plaintiffs cannot defeat the discretionary nature of the manner in which BOP provided for their safety by asserting that there was a general "danger" to sex offenders at FDC Milan. *Id*. ("It is the governing administrative policy, not the

[government's] knowledge of danger, that determines whether certain conduct is mandatory for purposes of the discretionary function exception."). Thus, the judgment or choice to place Plaintiffs in general population at FDC Milan was discretionary, regardless of the fact that they were known sex offenders.

## 2.    BOP has discretion in staffing.

Plaintiffs Complaint does not identify any specific statute, regulation, or agency policy that prescribed a course of conduct by staff at FDC Milan that was not followed. (Compl., ECF No. 1). Plaintiffs claim generally, among other assertions, that FDC Milan was "short staffed," though they do not identify on what they base the claim, or how specifically FDC Milan was short staffed at the time of the assault. (Compl. ECF No. 1, ¶ 15). There is no statute, regulation, or agency policy that specifically prescribes staffing for the East Unit at FDC Milan. (Clore, Ex. 1, ¶ 11). BOP's judgment or choices regarding staffing at FDC Milan is discretionary. *See Sharp*, 401 F.3d at 447 (holding that "law-enforcement-staffing decisions" are a decision "of the kind that the discretionary function exception was designed to shield"). *See also Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998) (noting that claims that the BOP was negligent in not providing more guards, are decisions protected by the discretionary function exemption).

### 3.    BOP has discretion in conducting searches for contraband.

Plaintiffs allege generally that BOP did not conduct adequate weapons and alcohol searches. (Compl., ECF No. 1, ¶ 15). Again, Plaintiffs fail to allege any facts to support their conclusion. *Id*. Plaintiffs do not identify any statute, regulation, or agency policy regarding weapons and alcohol searches that was not followed. *Id*.

There are BOP regulations that pertain to the search of inmates and inmate housing for contraband. *See* 28 C.F.R. §§ 552.11, 552.14. However, the regulations are discretionary. *See Montez*, 359 F.3d at 396-97 (holding that BOP regulations using the word "may" are discretionary). *See also Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002) ("[T]he regulations that govern cell searches confirm that the choice of the appropriate manner in which to search a cell is left to the discretion of the individual corrections officer."). At FDC Milan, staff perform spot checks of cells for contraband, but which cells will be searched is left to the discretion of the individual corrections officer. (Clore, Ex. 1, ¶ 12). *See also Varig Airlines*, 467 U.S. at 819-20 (holding that decision to spot-check for compliance with FAA regulations was discretionary and FAA inspectors were not negligent for not checking all aspects before certifying aircraft, the Court held "[t]he FAA has a statutory duty to promote safety in air transportation, not to insure it."). BOP's judgment or choices regarding searches for contraband are discretionary.

#### 4.      BOP has discretion in responding to safety concerns.

Plaintiff Evans alleges that he expressed "concern for his safety" to a counselor. (Compl., ECF No. 1, ¶ 14). Evans does not offer any further factual allegations on what he specifically told his counselor, and what he believes the counselor was required to do. Evans also claims that he was threatened by an inmate. *Id*. at ¶ 14. However, he does not allege when he was threatened, the nature of the threat, or whether he told the counselor, or any other staff, that he was threatened. *Id*. Even if Evans did tell his counselor that he was threatened, he makes no allegations that his counselor violated any statute, regulation, or agency policy by his conduct of allegedly failing to take additional precautions to protect him. *Id*. There are no allegations that Maire or Figura were threatened. (Compl., ECF No. 1).

BOP regulation at 28 C.F.R. § 541.22(a) provides that an inmate "may" be placed in protective custody based on threats, but whether to do so is discretionary. *See Montez*, 359 F.3d at 396-97 (holding that § 541.22 and other regulations using the word "may" are discretionary). *See also Dykstra v. United States Bureau of Prisons, et al.,* 140 F.3d 791, 796 (8th Cir. 1998) (affirming dismissal of claim for failure to place inmate in protective custody even though he reported concerns that an inmate was staring at him because decision to place in protective custody is discretionary); and *Morales v. United States*, 371 Fed. App'x 528, 534 (5th Cir. 2010) (affirming summary judgment even though inmate reported safety concerns

with gang members, because decision to segregate inmate was discretionary). Thus, BOP's judgment or choice regarding whether to take extra precautions based on Evans' alleged safety concerns was discretionary.

### B. The manner of providing for inmate safety is the type of conduct the discretionary function exception was designed to shield.

Where governmental policy allows discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Montez*, 359 F.3d at 397 (citing *Gaubert*, 499 U.S. at 324-25). "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id*. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id*. The *Montez* court framed the issue as whether the plaintiff's complaint "alleges facts sufficient to rebut the presumption that the decisions by the prison officials regarding [the inmate's] safety were of the kind that the discretionary function exception was designed to shield." *Id*.

Plaintiffs' Complaint does not make sufficient factual allegations to rebut the presumption that FDC Milan's staffs' decisions regarding placement in general population, staffing, weapons and alcohol searches, and reaction to safety concerns, were of the type grounded in BOP policy. Plaintiffs make no allegations regarding

13

their placement into general population, staffing, or weapons and alcohol searches, other than to claim that they amounted to an insufficient effort to protect Plaintiffs. (Compl., ECF No. 1, ¶ 15). Allegations that simply allege that BOP officials were negligent in making a decision, without addressing the nature of the decision, do not satisfy the "requirement that a complaint 'must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.'" *Montez*, 359 F.3d at 398-99.

Accordingly, the discretionary function exception applies to the claims related to placing Plaintiffs and the decedent in the general population, staffing, weapons and alcohol searches, and safety concerns. *See Sharp*, 401 F.3d at 447 (holding that "law-enforcement-staffing decisions" are a decision "of the kind that the discretionary function exception was designed to shield"). *See also Donaldson v. United States*, 281 Fed. App'x 75, 77 (3d Cir. 2008) ("[H]ow best to protect one inmate from the threat of attack by another— 'is of the kind that the discretionary function exception was designed to shield.'").

With respect to Evans' claim that an unidentified threat was made at an unidentified time by an unidentified inmate, his claim is also barred. (Compl., ECF No. 1, ¶ 14). In *Montez*, the decedent inmate had previously been in protective custody due to altercations with other inmates. *Montez*, 359 F.3d at 394. About a month after being released back into the general population, the inmate was beaten

14

to death with a fire extinguisher in an unsupervised television room. *Id*. The plaintiff alleged that the BOP failed to protect the inmate. *Id*. The court held that the manner of protecting inmates was discretionary. *Id*. at 397.

However, in determining whether the decisions were of the kind the discretionary function exception was designed to shield, the court noted that "a complaint that alleges the existence of a specific and immediate threat against an inmate is more likely to survive a motion to dismiss than a complaint that either alleges a nonspecific threat or provides only conclusory statements regarding the existence of a threat." *Id*. at 398. The court reasoned that a decision to ignore a specific and imminent threat is less likely to be the type of decision that can be said to be grounded in the underlying policy of the BOP. *Id*. In *Montez*, the court did not find the fact that the inmate was in protective custody prior to the attack sufficient to demonstrate the existence of a specific and immediate threat that was still present after he was released from protective custody. *Id*. Thus, the court held the presumption was not rebutted and the discretionary function exception applied. *Id*.

In this case, Evans alleges a nonspecific threat and provides only the conclusory allegation that he was threatened. (Compl., ECF No. 1, ¶ 14). There is no indication of when the threat was made, the nature of the threat, or whether Evans reported the threat. *Id*. Further, the general allegation that there had been attacks on sex offenders in the East Unit in the past, is not sufficient to demonstrate that there

was a specific and immediate threat to Evans. *See Montez*, 359 F.3d at 398. *See also Smallwood v. United States*, No. 10-260, 2015 WL 770363, at *7 (E.D. Ky. Feb. 23, 2015) ("It cannot be reasonably inferred that the specific and immediate threat exception applies simply because [an inmate] was attacked."). Accordingly, Plaintiffs fail to rebut the presumption that any judgments or choices made regarding the manner in which BOP provided for their safety was of the kind the discretionary function exception was designed to shield.

## V.   CONCLUSION

Plaintiffs have not met their burden to plead sufficient facts to establish jurisdiction where they do not allege any statute, regulation, or agency policy that prescribed BOP conduct and was not followed. Absent any mandated conduct, the BOP had discretion in determining how to provide for Plaintiffs' and the decedent's safety at FDC Milan, including whether to place them into the general population, staffing, weapons and alcohol searches, and how to respond to safety concerns. Further, Evans fails to plead facts to show that any alleged threat was specific or imminent. Therefore, the discretionary function exception applies, and Plaintiffs' action should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

By:  /s/ Jennifer L. Newby
Jennifer L. Newby (P68891)
Assistant United States Attorney
Attorneys for Defendant
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0295
Jennifer.Newby@usdoj.gov

Dated:  April 9, 2021

## CERTIFICATION OF SERVICE

I hereby certify that on April 9, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will provide notice to all counsel of record.

/s/ Jennifer L. Newby
JENNIFER L. NEWBY (P68891)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-0295
Jennifer.Newby@usdoj.gov

17